UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOYCE WILLIAMS O/B/O TLW,

              Plaintiff,

    -vs-

                              **DECISION AND ORDER**
                              **No. 12-cv-6560(MAT)**

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY

              Defendant.

_____

## INTRODUCTION

Plaintiff, Joyce Williams ("Plaintiff" or "Williams"), on behalf of TLW, a minor, filed this action pursuant to the Social Security Act ("the Act"), codified at 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her application for Supplemental Security Insurance ("SSI"). On July 8, 2013, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on September 19, 2013, Plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, the Court finds that substantial evidence supports the ALJ's decision. Accordingly, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## PROCEDURAL HISTORY

On July 24, 2009, Plaintiff filed an application for SSI, claiming disability since May 29, 2009 due to a learning

disability, which was denied.  Administrative Transcript [T.] 57-62.  On May 6, 2011, an administrative hearing was conducted before an administrative law judge ("ALJ"), at which Plaintiff and TLW testified.  T. 75-83.  On May 20, 2011, the ALJ issued a decision finding that TLW was not disabled within the meaning of the Act.  T. 39-53.

On August 23, 2012, the Appeals Councils denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner.  T. 1-6.  This action followed, wherein Plaintiff alleges that TLW, who was 10-years-old at the time Plaintiff filed her SSI claim, is disabled due to a learning disability/borderline intellectual functioning and knee pain.

**BACKGROUND**

**TLW's Knee Pain**

On December 15, 2009, Plaintiff was examined at Rochester General Pediatric Associates ("RGPA").  Treatment notes show that his physical examination was normal.  RGPA assessed that TLW was obese, was a "well teen," and that he was physically fit for physical education and sports.  T. 389-400.

Approximately one year later, TLW returned to RGPA, complaining of bilateral knee pain that he claimed to have experienced for the past four years.  T. 413.  A physical examination was conducted, after which TLW was diagnosed as having bilateral patellar femoral pain syndrome and obesity.  T. 414.  TLW

underwent bilateral knee x-rays, which showed a small joint effusion and were otherwise normal.  T. 414, 422, 423.

On February 23, 2011, Plaintiff returned to RGPA and reported improved knee pain.  T. 416.  His physical examination was normal and treatment notes show that Plaintiff was physically qualified for physical education, sports, and school activities. T. 419-420.

## Consultative Examinations

On September 23, 2009, Christine Ransom, Ph.D., conducted a Child/Adolescent Intellectual Evaluation of TLW.  T. 378-380. Dr. Ransom observed that TLW's attention and concentration were adequate and noted that he obtained an IQ score of 73, which placed him in the borderline range.  T. 379.  She also noted that TLW was able to dress, bathe and groom himself at age-appropriate levels. T. 380.  She noted that TLW reported enjoying spending time with friends, playing hide-n-seek, and watching movies.  T. 380. Dr. Ransom opined that TLW would have mild difficulty attending to, following and understanding age-appropriate directions, completing age-appropriate tasks, requesting assistance in an age-appropriate manner, and being aware of danger and taking needed precautions. She reported that TLW was able to adequately maintain appropriate social behavior, learn in accordance with cognitive functioning, and interact adequately with his peers and adults.  T. 380.

The following month, TLW was examined by consultative medical examiner Dr. Harbinder Toor.  T. 383-386.  Dr. Toor observed that TLW related to him in an age-appropriate manner and appeared to

have a normal attention span for his age.  T. 384.  TLW had a
normal gait and was able to walk on his heels and toes with only
slight difficulty and with complaints of knee pain.  T. 384.  Upon
examination, TLW had no muscle atrophy, no cyanosis, no clubbing,
no edema, no signs of scoliosis or kyphosis, and his range of back
motion was normal.   TLW's knees exhibited normal and full
movements.  T. 384.  Dr. Toor opined that TLW had mild to moderate
limitations for standing, walking, squatting, bending and lifting
due to his complaints of pain in his knee and back.  He also opined
that moderate obesity interfered with TLW's routine.  T. 386.

In November 2009, State Agency Psychiatrist Dr. K. Prowda and
State Agency Pediatrician Dr. J. Randall reviewed the record.
T. 387-392.  Doctors Prowda and Randall concluded that TLW's
impairment or combination of impairments was severe, but did not
meet, equal, medically equal, or functionally equal a Listed
impairment. T. 387.  Doctors Prowda and Randall found that TLW had
less than marked limitations in the domains of acquiring and using
information, and moving about and manipulating objects.  T. 389-
390.  They determined that TLW had no limitations in attending and
completing tasks, interacting and relating with others, caring for
oneself and health and physical well-being.  T. 389-390.

**Evidence from TLW's School**

In a May 2009 Individualized Education Program (IEP) report
generated by TLW's school, Arcadia Middle School recommended
special education classes for TLW in ELA, math, science and social

studies, and also recommended that TLW receive speech/language therapy. T. 370. The IEP report also showed that TLW was struggling to meet standards in math, reading, and writing, but that some progress was evident since the prior year. T. 375.

A November 2009 Speech and Language Evaluation Report showed that TLW demonstrated overall expressive language scores, a core language score, and a language memory score that were within the average range when compared to his age-matched peers. TLW's overall receptive language score was slightly below average. It was noted that, throughout the evaluation session, TLW required minimum prompting, repetition of information, and exhibited significant increased response time. Based on TLW's test scores that year, which showed an increase from 2005, the school determined that speech language therapy services were not recommended. T. 294.

Also in November 2009, Plaintiff underwent a School Psychological Evaluation. School Psychologist Diane M. Wilson ("Wilson") reported that TLW displayed average working memory skills and his visual perceptual reasoning skills were within the low average range. T. 316-318. TLW's performance on measures of basic academic skills fell within the average for word reading, reading comprehension, and sentence composition. T. 316-318. Wilson reported that TLW continued to need special education supports, and the learning disability classification was deemed appropriate given TLW's challenges with visual perceptual reasoning

and processing speed and underachievement in mathematics.  T. 316-318.

Another IEP conducted in November 2009 recommended special education classes in ELA, math, science, social studies, and resource room.  T. 257.  It was noted at that time that TLW's overall expressive language scores, core language score, and a language memory score were within the average when compared to his age-matched peers.  T. 259.

**Teacher Questionnaires and TLW's Report Cards**

TLW's June 23, 2009 report card indicates that he put forth little effort in art, Italian and music, and a good effort in math, physical education, science and social studies, and a high degree of effort in the language arts.  T. 204.

TLW's January 29, 2010 report card indicates that he put forth a fair degree of effort in the resource room, social studies, and math.  T. 201.  He also put in a good degree of effort in physical education.  T. 201, 342.

In April 2011, TLW's teacher, Deborah Arieno ("Arieno"), completed a questionnaire, in which she indicated that TLW had a third-grade reading level, although he was in ninth grade, and that he was not meeting standards in math.  T. 344-351.  Arieno noted there an unusual degree of absenteeism with TLW.  T. 344.  She also noted that he had a "slight" to "serious problem" in particular areas related to acquiring and using information, that he had "no problem" to a "very serious problem" in particular areas related to

attending and completing tasks, and that he had "no problem" in any area of interacting and relating with others, caring for himself, and physical well-being.  T. 347.

## Hearing Testimony

TLW was age 15 and in the ninth grade at the time of the hearing.  T. 18, 23, 29.  He took ibuprofen for his knee pain. T. 23.  He weighed 205 pounds and his height was approximately 5'5".  T. 23.  Plaintiff testified that TLW had knee pain that affected his ability to play some sports.  T. 23.

Plaintiff testified that she first noticed that TLW had academic difficulty in 2003.  T. 24.  TLW was receiving special education services, but Plaintiff could not recall when they started.  T. 25.  Plaintiff testified that she was in the process of having TLW tested for ADHD "because the school psychologist wanted him tested for that."  T. 26.  She also testified that Plaintiff did not have behavioral issues at school, except for "some fights in eighth grade."  T. 26.  According to her, TLW did his chores at home, but needed reminding.  T. 27.

TLW testified that he had a lot of friends, and that he liked to "talk" with his friends when he was not in class.  T. 30.  He testified that he also "liked to skateboard and stuff."  T. 30. According to him, he had knee pain that affected his activities, and he testified that it hurt for him to bend.  T. 30-31.  When asked by the ALJ if he found himself being distracted at school, he testified in the affirmative and explained that he "just star[es]

at something and . . . dose[s] off."  T.  34.  He also testified
that he is distracted at home.  When asked for an example, TLW
stated, "[l]ike, when my mom asks me to clean my room . . . I just
won't pay attention, I just won't do it."  T. 34.

TLW also testified that he was absent from school a lot
because he did not get enough sleep or because he was sick.  T. 35.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the factual findings of the
Commissioner are conclusive when they are supported by substantial
evidence.  Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).  The
statutory standard for children seeking SSI benefits based on
disability is

> [a]n individual under the age of 18 shall be
> considered disabled for the purposes of this
> title if that individual has a medically
> determinable physical or mental impairment,
> which results in marked and severe functional
> limitations, and which can be expected to
> result in death or which has lasted or can be
> expected to last for a continuous period of
> not less than 12 months.

42 U.S.C. §§ 1382c(a)(3)(C)(1).

In evaluating disability claims in children, the Commissioner
is required to use the three step process promulgated in 20 C.F.R.
§§ 416.924.  First, the Commissioner must determine whether the
claimant is engaged in any substantial gainful activity.  Second,
if the claimant is not so engaged, the Commissioner must determine
whether the claimant has a "severe impairment" or combination of
impairments.  Third, the Commissioner must determine whether the

impairment or combination of impairments correspond with one of the conditions presumed to be a disability by the Social Security Commission, that the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the listings. 20 C.F.R. § 416.924.

In addition, the regulations provide for a single method for determining functional equivalence based on domains of functioning. 20 C.F.R. § 416.926a(b)(1).  A child's functional limitations will be evaluated in the following six domains:  (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being.   20 C.F.R. § 416.926a(b)(1)(i-iv).   A medically determinable impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a.

Here, the ALJ followed this three-step procedure and determined that Plaintiff was not disabled under the Act.  In the ALJ's decision dated May 20, 2011, ALJ Jennifer Whang found that Plaintiff: (1) had not engaged in substantial gainful activity since July 24, 2009, the application date; (2) had the severe impairments of learning disorder/borderline functioning, and that Plaintiff did not have the severe impairments of ADHD and knee pain; and (3) did not have an impairment that meets or equals one

of the listed impairments listed in Appendix 1, subpart P, Appendix 1, or functionally equaled the severity of an impairment in the Listings.  T. 45-52.

Plaintiff contends that the ALJ erred when she found less than marked limitations in the functional domains of "acquiring and using information" and "attending and completing tasks."  Dkt. No. 1 at ¶ 7, Dkt. No. 12-2 at 1, 11.  For the reasons stated below, the Court finds that there is substantial evidence to support the ALJ's decision.

A.    "Acquiring and Using Information" Domain

Plaintiff argues that although the ALJ mentioned the statements of teacher Arieno and "that 'examiners from the Greece Central School District' found TLW struggles with reading and needs extended time to read through material, or with a reading partner to assist him[,]" the ALJ failed to described what weight she afforded these opinions "or what led [her] to the conclusion that TLW had less than marked difficulty in this domain." Dkt. No. 12-2 at 15-16.

The domain of acquiring and using information addresses how well a child learns information and how well the child uses the information that he has learned.  20 C.F.R. § 416.926a(g).  In this case, the ALJ acknowledged that TLW has a learning disorder/borderline intellectual functioning that affects his abilities in this domain.  T. 45, 48.  The ALJ explicitly took note of Arieno's statement that TLW had problems comprehending oral

instructions, reading and comprehending written material and learning new material, and expressing ideas in written form. T. 48. Additionally, the ALJ took note that examiners from TLW's school found that he struggles with reading and needs extra time to read through materials or needs a reading partner to assist him. T. 49.

However, the ALJ also took into account that TLW had overall done well in school and had been successful with assistance from consultant teachers and services (T. 258-259, 294), and noted that TLW "worked well at his own pace." T. 48, 371. Further, the ALJ's finding was supported by the opinions of doctors Prowda and Randall who opined that TLW had "less than marked" limitations, noting that "[TLW] was in regular classes with resource room." T. 389. Indeed, the opinion of a non-examining source, such as a state agency physician, can constitute substantial evidence in support of an ALJ's determination where, as here, it is consistent with the record as a whole. See Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 178 (N.D.N.Y. 2010) (same).

Thus, the Court concludes that the ALJ's determination that Plaintiff has less than marked limitations in acquiring and using information is supported by substantial evidence.

**B.   "Attending and Completing Tasks" Domain**

Plaintiff claims that, in arriving at her determination that Plaintiff had less than marked limitations in this domain, the ALJ failed to properly account for the opinions of school psychologist Michael H. Henrichs ("Henrichs"), Ph.D. and teacher Arieno.

In support of this contention, Plaintiff points out that, in November 2006, Henrichs found that "'behavioral ratings by [TLW's] parents and teachers indicate difficulty with cognitive problems/inattention to school.'" Dkt. No. 12-2 at 17.  Plaintiff also points out that Henrichs recommended that TLW be evaluated by his pediatrician for ADHD and that modifications in the classroom should increase.  Id.  Additionally, Plaintiff points out that, in 2011, Arieno found that TLW had a "very serious problem" in various areas related to his ability to attend and complete tasks.  Id. At 17-18.  Plaintiff also points out that Arieno reported that Plaintiff had a "serious problem" carrying out multi-step instructions, and stated in her 2011 report that TLW requires "'a lot of 1:1 adult support and extra time to complete all tasks[,] [h]e is often distracted by himself . . . and others[,] [and] [that] [h]e typically needed things explained two or more times and completed more work with direct assistance.'" Id. at 18.

-12-

The domain of attending and completing tasks gauges how well a child is able to focus and maintain attention. 20 C.F.R. § 416.926a(h). Some examples of limited functioning include: (1) being "easily startled, distracted, or over reactive to sounds, sights, movements, or touch"; (2) "being slow to focus on, or fail to complete activities of interest"; (3) becoming repeatedly sidetracked from activities or frequently interrupting others; and (4) being easily frustrated and giving up on tasks. See 20 C.F.R. § 416.926a(h)(3)(i)-(v).

In this case, the ALJ acknowledged that TLW had problems paying attention when spoken to directly and carrying out multiple step instructions that would affect his abilities in this domain. The ALJ took note of Arieno's statement that TLW required adult support and extra time to complete tasks, and that he is often distracted by himself. T. 49. However, in arriving at her determination that Plaintiff had less than marked limitation in this area, she took into account Arieno's statements that TLW had "no problem" in other areas in this domain, including carrying out single-step instructions, waiting to take turns, changing from one activity to another without being disruptive, and that TLW "completes more work with directed assistance." T. 49, 346. Moreover, the ALJ properly discounted the opinion of state agency medical consultants Prowda and Randall who assessed "no limitation" in this area, given that they provided no remarks or rationale with respect to this domain and because their assessment was contrary to

-13-

the other evidence in the record which showed, overall, that while Plaintiff's focusing and attention skills were deficient in certain respects, he was able to successfully engage himself, maintain focus, and complete tasks with support and additional time. <u>Id.</u>

Accordingly, the Court concludes that the ALJ's determination that Plaintiff has less than marked limitations in attending and completing tasks is supported by substantial evidence.

**CONCLUSION**

The Commissioner's Motion for Judgment on the Pleadings is granted (Dkt. No. 9), Plaintiff's cross-motion for judgment on the pleadings (Dkt. No. 12) is denied and the Complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                    S/Michael A. Telesca

                    _____
                    HONORABLE MICHAEL A. TELESCA
                    United States District Judge


DATED:      April 2, 2014
            Rochester, New York